STRICKLER ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY ET AL.

[No. 200, September Term, 1965.]

*Decided April 26, 1966.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, BARNES and McWILLIAMS, JJ.

*Hal C. B. Clagett,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for the appellants.

*Lionell M. Lockhart,* with whom were *William L. Kahler* and *DeBlasis & Kahler* on the brief, for the appellees.

BARNES, J., delivered the opinion of the Court.

Morris Miller, Inc., Gerald Miller, Inc. and Louis Miller, Inc. (Miller Associates), as contract purchasers, on March 25, 1963 petitioned the County Commissioners of Prince George's County, acting as the District Council for the Maryland-Washington Regional District of Prince George's County (District Council)[1] by Application A-4881 to rezone Lots 1 through 68 in Block N in a subdivision in the Sixth Election District of Prince George's County known as "Oxon Run Hills" from R-35 (semi-detached residences) to R-18 (medium density or "garden-type" apartments). These 68 lots contain 6.4607 acres and are laid out in a more or less "L" shape. The northerly part of the "L" is bounded on the east by 23rd Parkway, on the northwest by Catskill Street, on the southwest by Elko Place and on the south by Dunlap Street. The southerly and westerly part of the "L" is bounded on the north by Dixon Street, on the west by the lower or southerly portion of Catskill Street

---

1. The prevailing practice is to file the petition first with the Maryland-National Capital Park and Planning Commission.

(which curves to the northeast and then forms the northwesterly boundary of the northerly part of the "L," as we have noted) and on the south by Dunlap Street.

On August 21, 1963 the Technical Staff of the Maryland-National Capital Park and Planning Commission, Prince George's County Regional Office (Technical Staff) issued its report on Application A-4881 in which it recommended denial of the application, pointing out that the Master Plan for the Henson Creek Watershed proposed the R-35 zone for the property, that the character of the area to the east and west was that of single-family and two-family development, respectively, and that the development of apartments to the south in accordance with the master plan did not constitute a change of sufficient magnitude to justify a favorable consideration of the application.

On August 23, 1963, the Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission (Planning Board) unanimously recommended disapproval of Application No. A-4881.

In April 1963, the Miller Associates, as contract purchasers, petitioned the District Council, by Application A-4891, to rezone Lots 1 through 40 of Block P in the Oxon Run Hills from the R-35 zone to the R-18 zone. This property is a more or less triangular tract consisting of 3.9993 acres lying to the west and north of the "L" shaped parcel involved in Application A-4881 and is bounded on the northeast by Elko Place, on the south by Dixon Street and on the west by Catskill Street. The Technical Staff, on July 24, 1963, filed its report also recommending a denial of Application A-4891 and stated in some detail its reasons for recommending the denial with particular emphasis upon the provisions of the Henson Creek Master Plan, the surrounding uses, as well as other factors. The Planning Board also on July 24 unanimously disapproved Application A-4891.

It should be pointed out that to the south of Block N (Application A-4881), on the south side of Dunlap Street and east of Catskill Street is Holy Family Roman Catholic Church and Parochial School and to the east of the Church is an area zoned R-H for the Chestnut Hill Garden Apartments. On the west

side of Catskill Street across from Blocks N and P are the Green Valley Presbyterian Church, the Green Valley Elementary School and 6 vacant lots. The land lying to the northeast of Block N is developed for single-family or two-family use.

The Planning Board, notwithstanding its prior recommendations of disapproval of Applications A-4881 and A-4891, on October 2, 1963, by separate but similarly worded resolutions, unanimously rescinded, its prior recommendations and recommended approval of the applications to the District Council, reciting in each new resolution: "The Board finds that there have been sufficient changes in the character of the area to justify the requested reclassification."

The District Council heard both Applications A-4881 and A-4891 together on October 16, 1963. The applicants produced the expert testimony of a civil engineer, an architect, a realtor and a land developer indicating that it was not economically feasible to erect the semi-detached houses permitted in the R-35 zone, but that it was feasible and desirable to erect the medium density or garden-type apartments permitted in the R-18 zone and that the erection of such apartments would not injure surrounding property. They also testified in regard to "change" in the neighborhood since the adoption of the last comprehensive zoning map. James M. Hennessey presented the Planning Board's resolutions of October 2, read the stated reason but gave no reason for the Planning Board's change of mind other than that stated in the resolutions. Several neighboring property owners and a representative of an interested civic association gave reasons why they thought the proposed rezoning would be injurious to the surrounding properties and would not be in the public interest.

On November 5, 1963, the District Council disapproved both applications and later sent copies of its resolutions of disapproval to the applicants. The applicants filed a petition for review before the Circuit Court for Prince George's County and after the District Council had filed its answer, the protesting neighbors and improvement association, who had appeared at the hearing before the District Council were added as parties defendant on February 13, 1964.

After a hearing before Judge Bowie in the Circuit Court, an

order was passed by Judge Bowie on March 5, 1964 remanding the case to the District Council "for the purpose of reexamination and consideration" and the District Council was directed as follows:

> "[*T*]*o get an additional report from the Technical Staff which is to reconsider these rezoning applications, A-4881 and A-4891, together, in light of the more recent approval by the Planning Board. When this additional Technical Staff report is submitted, considering the Lots in the two Blocks as a whole,* then the District Council *shall consider such recommendation* from the Technical Staff *with the other record of this case as previously heard,* and with the admonition of this Court on the matters presented herein and take such action as they deem advisable under the circumstances, giving its reasons for such action." (Emphasis supplied).

The applications were again referred to the Technical Staff, which, on August 12, 1964—after considering Applications A-4881 and A-4891 together—reaffirmed its original position in a carefully considered and full report. The conclusions of the Technical Staff were as follows:

> "1. There is in existence a recently adopted Plan (The Master Plan for the Henson Creek Watershed, adopted May 15, 1963).
>
> "2. The requested zoning (R-18 Zone) is not in conformance with the zoning proposed on the adopted Master Plan (R-35 Zone).
>
> "3. We can find no evidence of sufficient change in the character of the area, based on either physical changes or on paper changes, to justify recommendations contrary to the adopted plan and we cannot presume a mistake in the adopted Plan.
>
> "4. There is no evidence of an error in the original zoning map or in its adoption.
>
> "5. The Plan, whose very purpose is to foresee needs, evidently does not foresee a public or community need that would support the requested change.

"6. The need for space for multiple-family dwellings has been provided for at other locations on the adopted Plan."

The District Council, on January 19, 1965, after considering the opinion and order of the Circuit Court remanding the case, the additional report of the Technical Staff, the testimony produced at the original hearing of October 16, 1963, but taking no new testimony other than the Technical Staff's additional report of August 12, 1964, approved the rezoning of the properties in Applications A-4881 and A-4891 from R-35 to *R-30* (rather than R-18) and stated:

"It was the determination of the District Council that the R-35 zoning which presently exists is not desirable, that the R-18 zoning requested would be entirely too dense zoning for this area, and that the property should be rezoned to the R-30 zone."

Judge Bowie affirmed this action of the District Council by an order passed on April 28, 1965, which, after reciting the action of the District Council, stated that it appeared to the court that "this action was not illegal, arbitrary or discriminatory." The appeal to this Court is from that order and was taken by the protesting neighboring property owners and the improvement association.

We are of the opinion that the rezoning order of the District Council of January 19, 1965 was arbitrary and capricious and Judge Bowie's order of April 28, 1965 affirming that action must be reversed.

The provisions of Section 79(i) of Chapter 780 of the Laws of 1959 (Chapter 780) clearly indicate that rezoning in Prince George's County must be supported by competent, material and substantial evidence in view of the entire record as submitted and must not be arbitrary or capricious, and if not so supported or if the District Council's action is arbitrary or capricious, the Circuit Court for Prince George's County may reverse that action. We have recently held that Chapter 780, as amended, controls rezoning in Prince George's County. *Woodlawn Area Citizens Association v. Board of County Commissioners for Prince George's County*, 241 Md. 187, 191, 216

A. 2d 149, 153 (1966). There is simply *no evidence of any kind* in the record before the District Council at either hearing in regard to the *R-30 zone.* All of the testimony and reports considered the R-35 and the R-18 zones, but there was no mention or consideration of the R-30 zone by the Technical Staff, the Planning Board or the oral testimony of any of the witnesses in regard to the nature or requirements of the R-30 zone. The resolution of the District Council does not give any reason for granting rezoning to the R-30 zone. It merely stated that the R-35 zoning was "not desirable", the R-18 zoning requested "would be entirely too dense" and that the property "should be rezoned to the R-30 zone." This last statement is the first time the R-30 zone was mentioned; it is obvious that no reason at all is given for that unrequested rezoning.

By Section 30.42 of the Prince George's County Zoning Ordinance [2] it is provided that the District Council "may grant a Zoning Map Amendment for a less intensive zone than that sought by the applicant for all or a part of the property for which zoning reclassification is requested," but this provision of the ordinance is subject to the statutory requirements that the unrequested, less intensive zone must be supported by competent evidence and its granting must not be arbitrary and capricious.

One cannot tell from the record before the District Council what the requirements of the R-30 zone are and what reasons prompted the District Council to grant the unrequested R-30 zone in regard to which, as we have indicated, there was no evidence whatsoever in the record before the District Council. In our opinion this attempted action by the District Council was entirely unsupported by competent, and indeed any, evidence and was arbitrary and capricious action by it.

As the District Council did not grant the R-18 zoning which it had rejected by its orders of November 5, 1963 with no new evidence before it which would have supported the granting of R-18 zoning, we do not reach the question of whether it would have been arbitrary and capricious to have granted R-18 zoning. *Cf. Woodlawn Area Citizens Association, Inc. v. Board*

---

2. Set forth in the appellee's brief, but not appearing in the record on appeal.

*of County Commissioners for Prince George's County, supra*
and *Schultze v. Montgomery County Planning Board,* 230 Md.
76, 185 A. 2d 502 (1962). Nor do we reach the question of
whether or not the District Council failed to comply with Judge
Bowie's order of March 5, 1964 in that it gave no sufficient rea-
sons for its action as required by that order of court.

We point out that the courts generally do not take judicial
notice of ordinances of municipal corporations. Chief Judge
Brune, for the Court, stated in *Walker v. D'Alesandro,* 212
Md. 163, 170-171, 129 A. 2d 148, 152 (1957) :

> "In reaching the conclusion that the defendant was
> entitled to an absolute privilege in respect of the acts
> and statements complained of, the trial court took ju-
> dicial notice of certain provisions of the Charter of
> Baltimore City and of an ordinance of the Mayor and
> City Council of Baltimore. The Code provides for the
> methods of proof of such an ordinance, not that the
> court shall take judicial notice thereof; and the general
> rule is that courts do not take judicial notice of such
> ordinances. Code (1951), Article 35, Section 75;
> *Central Savings Bank v. Baltimore,* 71 Md. 515, 18
> A. 809, 20 A. 283; *Givner v. Cohen,* 208 Md. 23, 116
> A. 2d 357, and cases therein cited. The rule is not in-
> flexible, as the *Givner Case* and *Shanfelter v. Balti-
> more,* 80 Md. 483, 31 A. 439, and *McNally v. Moser,*
> 210, Md. 127, 122 A. 2d 555, show, where the ordi-
> nances have been considered below; and we shall com-
> ment upon the ordinance actually cited in the opinion
> of the trial court for much of the same reasons that
> ordinances not duly proven were considered in those
> cases."

Any ordinances relied on should be offered in evidence and
made part of the record so that they will be before us on ap-
peal. This Court will feel free to dismiss a case on appeal, *sua
sponte,* if the relevant portions of the ordinances relied upon
are not in the record on appeal. We trust that the Bar will
not overlook this requirement, so that cases may be fully con-

sidered on their merits rather than dismissed because of the incompleteness of the record on appeal.

> *Order of April 28, 1965, reversed, and the case remanded with instructions to the lower court to reverse the decision of the District Council of January 19, 1965, thus leaving in effect its orders of November 5, 1963, denying the applications; the costs to be paid by the Miller Associates.*