# MALASKY, ET AL. *v.* MONTGOMERY COUNTY COUNCIL

[No. 413, September Term, 1969.]

*Decided July 8, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John J. Delaney,* with whom were *Linowes & Blocher, R. Robert Linowes* and *Joseph P. Blocher* on the brief, for appellants.

*H. Christopher Malone, Assistant County Attorney,* with whom were *David L. Cahoon, County Attorney,* and *Alfred H. Carter, Deputy County Attorney,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

We were advised at the argument in this appeal that it represents the final appeal involving a number of applications for rezoning in Montgomery County which were originally granted on November 10, 1966, by the Montgomery County Council, sitting as a District Council (Council), subsequent to the general election of November 8, 1966, at which six of the seven members of the Council were defeated, and prior to the assumption of office by their newly elected successors in office. The applications were reconsidered by the newly constituted Council on November 19, 1966. After a full rehearing on the merits on February 3, 1967, the newly constituted Council denied the subject applications on April 11, 1967. On appeal to the Circuit Court for Montgomery County (Shearin, J.), the action of the Council on April 11, 1967, was affirmed by the Circuit Court by its order of October 21, 1969. A timely appeal was taken to this Court from that order of the Circuit Court.

We passed upon various aspects of the question presented in this appeal in *Hunt v. Montgomery County,* 248 Md. 403, 237 A. 2d 35 (1968) and in *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 254 A. 2d 700 (1969).

In the present case, there are two principal questions:

(1) Did the Circuit Court err in holding that under the applicable law the Council could, on its own motion, without assigning "good cause" proceed within thirty days after the prior action of the Council on November 10, 1966, to reconsider the granting of the applications and (2) in holding that the action of the Council on April 11, 1967, denying the applications was in accordance with the applicable law and supported by legally sufficient evidence?

We have concluded that the Circuit Court did not err in either regard and shall affirm its order of October 21, 1969, affirming the Council's action of April 11, 1967.

The subject property is owned by the appellants, Harry Malasky and Joseph Kaufmann. It consists of 25.8184 acres of land lying in the northeast quadrant of the White Oak Interchange between Columbia Pike (U.S. Route 29) and New Hampshire Avenue in an area known as White Oak, Montgomery County.

The subject property is vacant and zoned R-90. It is bounded on the north by a single-family subdivision also zoned R-90. On all other sides, the property is enclosed by major highways—on the west by New Hampshire Avenue, on the east by U.S. Route 29 (the Columbia Pike) and on the south by the interchange of the two highways. It overlooks the large White Oak Regional Shopping Center located directly across U.S. Route 29 in the southeast quadrant of the interchange.

On November 30, 1965, the applicants filed three applications for rezoning the subject property, as follows:

1. E-671 for the requested reclassification of 2.0704 acres from the R-90 (One-Family, Detached, Strictly Residential) zone to either the C-2 (General Commercial) zone or the R-20 (Multiple-Family, Medium Density Residential) zone. (The request for the C-2 rezoning was withdrawn by the applicants at the original hearing.)

2. E-672 for the requested reclassification of 7.1460 acres from the R-90 zone to the R-T (Town House) zone.

3. E-673 for the requested reclassification of 16.602 acres from the R-90 zone to the R-20 zone.

Under the existing R-90 zoning, 77 dwelling units could be erected. Under the proposed zoning the maximum number of dwelling units which could be erected would be 460. The three applications proposed 404 dwelling units—66 town houses in Application E-672 (with 102 parking spaces) and 338 apartment units in application Nos. E-671 and E-673 (with 510 parking spaces).

The Technical Staff of the Montgomery County Planning Board in its report of February 15, 1966, recommended denial of the three applications as well as two other applications (Nos. E-624 and E-639) in the same quadrant indicating that none of the applications complied with the White Oak and Vicinity Master Plan (which it saw no reason to overrule), the northeast quadrant was logically a part of the extensive single-family detached residential area extending to the north on both sides of New Hampshire Avenue and the shopping center and more intensive uses should remain to the south of U.S. Route 29. The Planning Board adopted the report of its Technical Staff and recommended denial of the applications to the Council.

The original hearing was held by the Council on March 10, 1966. There was expert testimony offered by the applicants to the effect that there was a change in the character of the neighborhood, a mistake in original zoning and the Master Plan was obsolete. The zoning changes relied on were south of Route 29, primarily in the southeast quadrant; there were no zoning changes in the northeast quadrant. It was conceded by the applicants that the subject property could be developed under the R-90 zoning, but this type of development would not be logical or desirable. Some 197 property owners residing immediately to the north of the subject property appeared and testified in opposition to granting the applications. Their testimony indicated that no additional apartments were needed, that the erection of the apartments and town houses would result in the overcrowding of the schools, and that the proposed development would depreciate the value of their properties. They further testified that the

town houses would dominate the single-family houses below, and that Route 29 and New Hampshire Avenue form substantial physical barriers between the commercial and industrial property lying to the south and east of Route 29 and the residential neighborhood.

A general election was held on November 8, 1966. Only one of the seven incumbent members of the Council was reelected. The six members of the Council who were not reelected met in an unscheduled meeting before their successors could assume office; and on Thursday, November 10, 1966 (the meeting extended into the early morning hours of Friday, November 11), the "lame duck" Council attempted to act upon all pending zoning applications. In the process it hastily adopted numerous resolutions which reclassified some 2,000 acres of land, substantially all contrary to a master plan and including applications E-671, E-672. and E-673. This action was subsequently halted by an order of court. The "lame duck" Council in granting the reclassification in E-671 and E-673 for R-20 zoning and in E-672 for the R-T zoning, by a 5 to 1 vote, recited in its resolution of November 10, 1966:

> The Council "disagrees with the Planning Board and Staff, finding that the application should be granted. The existing land uses at the New Hampshire Avenue—U.S. Route 29 interchange are of a high degree of intensification rather than of a single-family nature. The number of changes in the character of the area warrants the reclassification of the subject property."

It will be observed that there was no finding that application E-672 complied with the purposes of the R-T zone or was compatible with the neighborhood. See Sections 111-12, 111-49, Montgomery County Code (1965) and *O.F. Smith Brothers Development Corp. v. Montgomery County Council*, 246 Md. 1, 227 A. 2d 1 (1967).

The one incumbent councilman who was reelected and the six newly elected councilmen took their oath of office and entered into their duties on November 15, 1966. On

November 19, the newly constituted Council adopted Resolutions Nos. 6-4 and 6-5 whereby "on its own motion," it reconsidered Applications E-671, E-672 and E-673 and some 71 other applications decided on November 10-11. By Resolution 6-6 the newly constituted Council appointed an Ad Hoc Committee of the County legal officers, other lawyers and other experts to review and make recommendations to it in regard to the reconsidered applications and to report its findings to the Council within 10 days. The Report of the Ad Hoc Committee was filed on November 29 and pointed out that virtually all of the rezonings subject to reconsideration were contrary to a master plan (one recently adopted) ; most of the rezonings were contrary to the recommendations of the Planning Commission and Planning Board, when prior to the time the "old" Council took office in 1962, the Council had followed the recommendations of the Planning Board in approximately 80% of the cases. The Report stated in substance that in reviewing individual cases it had found substantial reasons to reconsider some of the appeals in that "some opinions accompanying the rezoning reflect errors in fact, material contradictions or inconsistencies, or findings based upon insubstantial evidence."

On the following December 6, the Committee submitted a report on all 74 cases and recommended that they be reheard. It reported that the Planning Board and Staff recommended that all applications in the White Oak Planning Area (including the three subject applications) be denied for various reasons including inconsistency with the Master Plan, that Route 29 provided an adequate buffer from intensive uses to the south, and there were no sufficient changes in the northeastern and northwestern quadrants to justify the rezoning.

After a hearing the Circuit Court for Montgomery County passed a decree on February 2, 1967, in *Hunt v. Montgomery County,* Law No. 20665, sustaining the authority of the Council to reconsider the prior zoning orders and declaring that Resolution 6-4 vacated the prior grant of zoning appeals inasmuch as that action was

taken within 30 days in accordance with Section 111-50 of the Montgomery County Charter and there was no applicable provision of law that required the showing of "good cause" as a prerequisite to take such action to reconsider. This decree was affirmed by us in *Hunt v. Montgomery County, supra,* 248 Md. 403, 237 A. 2d 35 (1968).

The three subject applications were reheard by the Council on February 3 and February 10, 1967. At the rehearing an expert planner testified for the applicants that the subject property was a logical location for the requested R-20 and R-T rezoning. He admitted on cross-examination that although there had been a number of petitions filed for rezoning of land in the northeast quadrant subsequent to the adoption of the White Oak Master Plan, none of the petitions had been granted. He stated, however, that he did not consider this to be "a significant planning factor." He also testified that the Master Plan in his opinion comprised several neighborhoods and that he was "not at all sure that there had been a decision on the part of the Court of Appeals that says there has to be a change in the neighborhood." He also stated that in his opinion it made no difference that there was vacant land, a dual highway or a street in between the proposed rezoning and the land to the south across the interchange. He admitted that single-family houses could be built on the subject property but it would be a waste to build them there.

A traffic expert also testified for the applicants. In his opinion, Route 29 and New Hampshire Avenue could handle the increased traffic which would be generated from the proposed rezoning, if granted, and there would be no adverse effect upon the residential development in the area. However, he did not know how many apartment units had been zoned, but not developed, or the traffic those units would generate as and when developed. Furthermore, he had made his traffic counts at only the p.m. peak hours, showing only the effect of the three subject applications and no others.

A real estate expert testified that in his opinion the

proposed development would have no adverse effect upon the marketability of abutting residential units. His report, however, contained no comparable figures for comparable properties not located near town houses or apartments.

Lewis Elston, Planning Engineer for the Planning Commission, who had not been present at the original hearing, testified at the rehearing and presented supplemental evidence. He testified that sufficient acreage had been zoned in the Master Plan area from the Clearview Towers Apartments in the southwest quadrant of the interchange and proceeding east across New Hampshire Avenue and south of Route 29 to Paint Branch Creek to erect 5,000 apartment dwelling units. From Clearview Towers to the east along Route 29 for some five miles there is a total of approximately 11,000 apartment units. The Preliminary Plan for White Oak and Vicinity was offered in evidence and that plan recommended and illustrated a single-family development for the northeast quadrant. Mr. Elston also advised the Council for the first time in the record that the comprehensive plan consists of not only the White Oak Plan adopted on November 28, 1962, but also in addition, the General Plan subsequently adopted on January 22, 1964. The General Plan also indicates low density single-family residential development in the northeast quadrant.

Mr. Elston also stated that, in his opinion, the northeast quadrant constituted a separate neighborhood, and that an area which develops as a solidly residential development in which relatively small parcels of land remained undeveloped, as had occurred in the northeast quadrant, should normally be completed in the same form as had been recommended by the Planning Commission. He also pointed out by using a topographic map and cross-section profile that the proposed town houses and apartments would be elevated higher to a maximum of 47 feet than the adjacent single-family houses and that the town houses would be only 40 feet from their rear lot lines. Hence, the apartments and town houses because of the

difference in elevation would be some four or five stories higher than the single-family homes and this would have a detrimental effect upon the homes located below them.

Various property owners in the immediate neighborhood of the subject property testified at the rehearing against granting the applications. Their status as parties aggrieved is not challenged. Their testimony indicated that beginning with the original study which produced the Preliminary Plan every professional planner compensated at the "public taxpayer's expense" had recommended single-family residential development for the northeast quadrant; that 190 families opposed the granting of the applications; that 21,000 persons would enter the area if the applications were granted, thus overcrowding the northeast quadrant; that the roads and schools were inadequate to care for the large increase in the number of persons who would come into the area if the applications were granted; that Route 29 and New Hampshire Avenue are buffers and no changes have occurred in the northeast quadrant which would justify the proposed rezoning; and that the subject property could be developed in the R-90 zone.

On April 11, 1967, the Council unanimously adopted Resolution No. 6-360 denying the three subject applications. In a carefully considered opinion, the Council reviewed the prior proceedings, which we have already mentioned, and then stated in relevant part:

"The Montgomery Planning Board and its Technical Staff recommended denial. They are of the opinion that the White Oak and Vicinity Master Plan should not be violated, and that multifamily zoning should remain south of U.S. Route 29 with its accompanying more intensive uses.

"The District Council, after thorough consideration of the exhibits of record and testimony presented at the hearings, agrees with the Planning Board and Staff, finding that the applica-

tions should be denied. The Council finds that there have been no changes in the northeast quadrant of the intersection of U.S. Route 29 and New Hampshire Avenue. There has been no change in the character of the area to warrant reclassification. Further, the Council finds that U.S. Route 29, a major highway, is a natural boundary for zoning purposes, and serves as a buffer between the commercial and high density uses to the south and residential development to the north. Further, the Council finds that existing and proposed apartments in the area are more than sufficient to meet the needs of the community.

"The Council finds that Application No. E-672 does not comply with the purposes of the R-T Zone as set forth in Section 111-12 of the Montgomery County Code 1956. Further, the Council finds that R-T zoning at this location would not be compatible with the surrounding neighborhood.

"The Council finds that it mistakenly or inadvertently granted the aforesaid Zoning Applications for the R-20 and R-T Zones at the same time that it denied Zoning Applications Nos. E-296, E-302 and E-452 for commercial zoning in Resolution No. 5-3222, located abutting or adjacent to the subject properties in the same quadrant. Therefore, it adopts and affirms the opinion and decision contained in that Resolution. Further, the Council finds that the new evidence presented by an expert planner from the Park and Planning Commission, that the subject properties can be developed as single family residential, that apartments and townhouses would be undesirable at this location and that they would have an undesirable effect on single family homes to the north, justifies the denial of these applications."

On appeal to the Circuit Court for Montgomery County, Judge Shearin filed a well-considered and helpful opinion on October 21, 1969, and, on the same day, filed an order affirming the action of the Council of April 11, 1967.

## (1)

We are of the opinion that Judge Shearin correctly ruled that under the applicable law and our decisions in the *Norbeck* and *Hunt* cases, *supra,* the Council could, on its own motion, without assigning "good cause," proceed within thirty days after the prior action of the Council on November 10, 1968, to reconsider the granting of the three applications in question.

Section 111-50 of the Montgomery County Code as a result of the passage of Ordinance 4-113, adopted October 10, 1961, provides in relevant part:

> "The decision of the District Council on any application for a map or text amendment shall be final except that the District Council on its own motion may within 30 days thereafter reconsider its decision on any application. The adoption of a resolution on such motion to reconsider shall stay the time within which an appeal may be filed in the Circuit Court pursuant to Section 78A, Chapter 780, Laws of Maryland 1959, as now or hereafter amended. The final decision pursuant to any reconsideration shall be in the same form as the original decision with an opinion and accompanying resolution stating the reasons for the action taken by the District Council. All persons notified of the original decision shall be notified of the decision upon reconsideration."

This provision of the Montgomery County Code was, in effect, ratified and confirmed by the enactment of the Act of 1967, Chap. 177, approved April 14, 1967, and effective on June 1, 1967, amending Section 78A of Chapter 780 of the Laws of 1959 in regard to Special Proce-

dure in Montgomery County, which provides, *inter alia,* that:

> "The action of the District Council shall be deemed to be final, unless the Council shall, within 30 days thereafter on its own motion, for any reason, reconsider its action. The time for appeal herein provided shall be stayed until any such reconsideration shall be determined and concluded."

Prior to the adoption of Ordinance 4-113 on October 10, 1961, the applicable law had provided that a decision of the Council in rezoning applications was not final if a petition for reconsideration was filed within 20 days and granted by the Council for "good cause shown." If granted, the Council could either rescind or suspend the decision. The change in the statutory language by the elimination of the words "petition requesting reconsideration," "for good cause shown," "rescinded" and "suspended," and the use of the language authorizing reconsideration on the Council's own motion clearly indicate a legislative intention to eliminate the requirement that "good cause" be shown as a requisite for reconsideration by the Council.

In *Norbeck* and *Hunt* we held that under Section 111-50 of the Montgomery County Code, it was not necessary that "good cause" be shown in order to have a reconsideration of the granting of a prior rezoning application by the Council within the 30-day period. We consider these cases to be dispositive of this question. As Chief Judge Hammond, for the Court, aptly stated in *Norbeck*:

> "Appellants make three arguments: 1 — the newly elected Council illegally nullified the decision of the previous Council. . . thereby denying appellants due process of law; . . .
>
> "Appellants start their argument on the procedural aspects by in effect claiming a vested right in the old Council's decision. . . , arguing

that a prior decision by the Council can be reopened only for fraud, surprise or mistake. . . . .

"*Hunt v. Montgomery County,* 248 Md. 403, largely answers appellants' argument and compels its rejection. There we approved a declaration by Judge Clapp (which appears in the record of that case but not in the reported decision) that § 111-50 of the Montgomery County Code (1965) did not require good cause be shown for the Council to reconsider a prior zoning decision. In that case the very resolution under which E-928 was reconsidered, Resolution 6-4, was at issue." (254 Md. at 64-65, 254 A. 2d at 704.)

(2)

The remaining question is whether the action of the Council on April 11, 1967, denying the three subject applications was in accordance with the applicable law and supported by legally sufficient evidence.

There is clearly no issue of any confiscation of property by continuing the R-90 zoning inasmuch as the evidence shows that the subject property can be developed by erecting single-family dwellings as permitted in the R-90 zone. See *Walker v. Board of County Commissioners of Talbot County,* 208 Md. 72, 116 A. 2d 393 (1955), *cert. denied,* 350 U. S. 902; *Fertitta v. Brown,* 252 Md. 594, 251 A. 2d 212 (1969).

The remaining issue is whether there was sufficient evidence to make a denial of the applications "fairly debatable." If the denial was "fairly debatable," we have held many times that the courts will not substitute their judgment for that of the legislature or administrative body. See *Himmelheber v. Charnock,* 258 Md. 636, 267 A. 2d 179 (1970) and cases therein cited.

The evidence before the Council at the rehearing, which we have already set forth, indicates to us that it was "fairly debatable" in regard to whether the Council should deny the applications. Indeed, we have held that

an adverse report by the Planning authorities, if that report is supported by sufficient facts and reasons, is in itself sufficient to make a denial of the requested reclassification fairly debatable. *Board of County Commissioners of Howard County v. Turf Valley Associates,* 247 Md. 556, 233 A. 2d 753 (1967).

The adverse report of the Technical Staff and of the Planning Board were well supported by sufficient facts and reasons.

We conclude that the lower court was correct in declining to disturb the action of the Council on April 11, 1967.

> *Order of October 21, 1969, affirmed, the appellants to pay the costs.*