LARGO CIVIC ASSOCIATION ET AL. *v.* PRINCE GEORGE'S COUNTY, MARYLAND ET AL.

[No. 666, September Term, 1973.]

*Decided April 23, 1974.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*James F. Vance* for appellants.

*Ellis J. Koch* and *Harry Arthur Boswell, Associate County Attorneys for Prince George's County,* with whom was *Joseph S. Casula, County Attorney for Prince George's County,* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

Harry A. Boswell, Jr., for Harry Boswell Associates, contract purchaser of 77.7978 acres of land (A-7709) in Prince George's County, made application for a zoning map amendment so as to change the zoning on the land from R-R (rural residential) to C-1 (local commercial). The "Statement of Reasons for and Justification in Support of the Request for Zoning Map Amendment" indicates that as to A-7709 the applicant's intent was "to actually obtain 20 acres of C-1 zoning, 10.3 acres of R-30 [(multiple-family, low-density residential)], and 36.8 acres of RT [(town house)] zoning." The "justification" expressed an intent "to provide ... for a Green Space, Club and Recreation area and for the dedication of two new streets and the widening of the

existing White House Road." Six months later Boswell and Philip Lustine, contract purchasers for another parcel of land (A-8247), separated from A-7709 by White House Road, applied for rezoning from R-R to C-1. The "justification" as to A-8247, which parcel contained 62.945 acres, stated, "[w]hether or not the Comprehensive Development Zone [then being considered by the Maryland National Capital Park and Planning Commission (MNCPPC)] becomes available, it is the intention of the owners of the subject application to present a design in accordance with the spirit of such an ordinance to include apartment, town house, and office uses" in addition to green spaces and lakes.

The matter went to hearing before the then Board of County Commissioners [1] sitting as the District Council.[2] The MNCPPC Technical Staff Report on A-7709 recommended "approval of the C-1 zone for only 15 acres, with the suggestion for approval of the R-30 zone for 27 acres and denial for the remainder." The recommendation was subject to certain conditions among which was that "the R-30 zone shall be developed in a density not to exceed 9.5 dwelling units per acre." The report of the technical staff pertaining to A-8247 recommended "denial of the C-1 zone or any other commercial or multi-family residential zone with the suggestion that the property remain in the R-R zone." The Prince George's County Planning Board recommended as to application A-7709 the rezoning of the property so as to contain 20.0 acres of C-1, 35.3 acres of R-30, 10.0 acres of R-80 (one-family, detached residential) with 2.79 acres to remain in the R-R zone for green space. The same Board recommended as to A-8247 disapproval for a C-1 zone, but

---

1. At the General election held on November 3, 1970 the voters adopted a charter for Prince George's County which created the office of County Executive and an eleven-member County Council, effective February 8, 1971.

2. The transcript of the proceedings indicates that the case was called for hearing on August 5, 1970, but was continued at the request of the protestants until August 11, 1970. At that time four County Commissioners including the chairman were present. The matter was not concluded and was continued until August 25, 1970. When the testimony relative to A-7709 was concluded, the Commissioners then heard testimony concerning A-8247. Only three members of the district council were present for the latter hearing.

approval of 15 acres of R-30, 8 acres of C-O (commercial office building), 12 acres of R-10 (multiple-family, high-density residential), 10 acres of R-H (multiple-family, high-rise residential), 12 acres of R-T with 1.735 acres to remain as R-R zoning for green space. There were conditions affixed to the Board's recommendation.

Four protestants individually testified against the zoning map amendment and submitted exhibits [3] to bolster their position. The protestants' testimony was to the effect that the proposed rezoning would not materially affect their property insofar as causing depreciation is concerned, but that the proposal, if allowed, would increase traffic, overcrowd the schools and place a burden on the sanitary system. One protestant sought to establish by cost accounting that it would take the county many years to recover its initial outlay for road improvement and the installation of water and sewerage. The District Council, by a vote of two to one, adopted the recommendations of the Planning Board.

Feeling aggrieved at the Council's action all the protestants who had testified before the Council appealed to the Circuit Court for Prince George's County. In the appeal they were joined by Joseph R. Mosby, Eva L. Mosby, Leroy C. Kane and Joyce D. Kane, who had not so testified. The Largo Civic Association, who had protested the rezoning, also appealed. Judge Samuel W. H. Meloy affirmed the action of the District Council, and the appellants have appealed to this Court. The appellees, Prince George's County, et al., have moved to dismiss the appeal on the ground that the appellants have no standing as they are not aggrieved parties within the meaning of the law.

At the time of the hearing the Largo Civic Association was not an incorporated body,[4] and it has not been shown in the

---

**3.** Some of those exhibits included a Prince George's County 20-year highway study, an automobile trip ratio, estimated traffic volume, public works analysis, potential State road construction projects, flood plain information, proposed fiscal revenue for R-R zoning, pupil yield — existing zoning and master plan, storm drainage run-off and fiscal cost/return to Prince George's County.

**4.** Appellants' brief indicates that the Association has since incorporated. We are not, however, advised as to when the incorporation occurred.

record before us that it was either a taxpayer or an aggrieved party. Consequently, it has no standing to appeal. *Improvement Ass'n v. Raine*, 220 Md. 213, 151 A. 2d 734 (1959); *Windsor Hills Imp. Ass'n v. Balto.*, 195 Md. 383, 73 A. 2d 531 (1950). Therefore, the appellees' motion to dismiss is granted as to Largo Civic Association.

Appellees bottom their argument that the appeal should be dismissed as to the Mosbys and the Kanes on the provisions of § 59-85 of the Prince George's County Code of Public Local Laws (1968), subsections e and j. Those two subsections confer a right of appeal from the District Council to the Circuit Court and a further right of appeal from the Circuit Court to this Court by "the applicant, or any party to the circuit court review who is an aggrieved party." Appellees reason that the record fails to show that Joseph R. Mosby, Eva C. Mosby, Leroy C. Kane and Joyce D. Kane were parties to the proceeding before the District Council, and hence they are not aggrieved within the meaning of *Bryniarski v. Montgomery Co.*, 247 Md. 137, 230 A. 2d 289 (1967). In that case the Court of Appeals held, at 143, that:

> "Under the applicable statutory law, two conditions precedent must be met before a person has standing to appeal to the Circuit Court . . . from a decision of the . . . [District Council]: (1) he must have been a *party to the proceeding before the* [District Council], and (2) he must be *aggrieved by the decision of the* [District Council]."

The fallacy in the appellees' argument is that the record, although not the transcript, does indicate that the Mosbys and the Kanes appeared before the District Council even though they did not testify. In a "Petition for Reconsideration" [5] filed with the District Council the Mosbys and the Kanes are listed as parties to the petition. Moreover, the petition recites:

> "4. On December 18, 1970 the Board of County

---

5. The petition was not acted upon by the District Council because an appeal to the Circuit Court for Prince George's County had already been noted.

Commissioners mailed to Your Petitioners and others a Notice of Final Decision of their action taken on October 30, 1970 [in case A-7709 and A-8247]."

The petition was submitted under affidavit. We glean from the "Petition for Reconsideration" that the Mosbys and the Kanes were present at the hearing before the District Council even though they did not testify, and their appearance is not noted in the transcript. We find nothing in *Bryniarski v. Montgomery County, supra,* holding that a person must testify before the administrative agency in order to be a "party to the proceeding before the" agency. Indeed, there is no requirement that he do so provided the record shows he was in fact a party. *DuBay v. Crane,* 240 Md. 180, 213 A. 2d 487 (1965). *See also Hertelendy v. Montgomery Cty.,* 245 Md. 554, 226 A. 2d 672 (1967). As the record in this case indicates that the Mosbys and the Kanes were parties before the District Council, their appeal may not be dismissed under the first requisite of *Bryniarski v. Montgomery County, supra.* We observe that it would be a simple matter to determine who was or was not a party to the proceeding before the zoning agency if the agency would follow the practice in Baltimore City and some counties. There the name and address of each person appearing at the hearing is obtained in writing regardless of whether the individual testifies. Such a procedure insures against a person who appeared at the zoning hearing being denied his or her right to appeal merely because they did not testify. We, therefore, suggest that a roll of those in attendance at the hearing be taken by the agency and that the roll be made part of the record.

The appellees further challenge the standing of all of the appellants to appeal because of the distance that the appellants reside from the land that was the subject of the rezoning applications. Our perusal of the record discloses that the Peloquin residence is about 3,000 feet from the A-7709 tract, while Dercola is 4,300 feet away. The record is silent as to the distance, in feet, that the other appellants live from the subject properties. The appellees conclude,

however, that the appellants reside at a point too distant for appellants to be aggrieved parties.

It is apparent from the aerial photographs, maps and other evidence submitted at the hearing that the applicants' property is readily visible from the homes of the appellants. Unlike *Wilkinson v. Atkinson,* 242 Md. 231, 218 A. 2d 503 (1966), there is no "broad beltway" acting as a barrier, separating the appellants' properties from that of the applicants'. Nor is there evidence that the appellants' residences were situate on a high hill with a dominant view as in *Wilkinson v. Atkinson, supra.* We think that the record, while leaving much to be desired, nevertheless establishes the appellants' proximity to the subject properties, and that their proximity results in their being "personally and specially affected in a way different from that suffered by the public generally", *DuBay v. Crane, supra* at 185; *Jahnigen v. Staley,* 245 Md. 130, 135, 225 A. 2d 277, 280 (1967); *Alvey v. Hedin,* 243 Md. 334, 339, 221 A. 2d 62, 64 (1966), and thus satisfies the second requisite of *Bryniarski, supra.* We hold that the appellants are aggrieved parties, entitled to maintain this appeal, and the appellees' motion to dismiss, except as to the Largo Civic Association, is denied.

We turn now to the consideration of the issues raised by the appellants in this appeal.

## I.

Appellants contend that the rezoning granted by the District Council is void for lack of procedural due process of notice. The Prince George's County Code of Public Local Laws (1963), § 59-83 (c) provided in pertinent part:

"Before any regulation or regulations authorized by this article may be passed, the district council ... shall hold a public hearing thereon and shall give notice of the time and place thereof by one insertion in two newspapers of general circulation respectively in the county in which the property is located. ... [T]he text or copy of the text of the

> regulations, together with the map or maps forming part of or referred to in the regulations, shall be on file for public examination . . . in the office of the clerk to the county commissioners of Prince George's County. The cost of advertising in connection with publication of proposed amendments in the zoning regulations or maps shall be paid by the persons or corporations making application for such changes."

The Code of Public Local Laws also provides that the District Council is empowered to include in its regulations a provision for additional notice which notice may be given by mail to the owners of property in the general vicinity or by the posting of the notice on or in the vicinity of the property involved. The attack launched by the appellants in the instant case is not directed toward the failure on the part of the applicants to give any notice, but rather is concerned with the type of notice given. Appellants contend that while the application and notice indicate a desire to rezone the properties to C-1, that indication was misleading and incorrect because the applicant in actuality desired that only a small portion of the land be rezoned to C-1 and that the balance be rezoned in varying degrees of residential density.

There are two answers to the appellants' argument. First, § 30.42 of the County Zoning Ordinance, adopted by the Board of County Commissioners of Prince George's County on March 12, 1965, provides:

> "The district council may grant a zoning map amendment for a less intensive zone than that sought by the applicant for all or a part of the property for which zoning reclassification is requested."

Thus, under the ordinance the Council had the right to grant "less intensive" zoning than that sought by the applicant. The question remains, however, of what is meant by the words "less intensive zone".

The Zoning Ordinance of Prince George's County, § 11.1, provides:

"For the purpose of these regulations, the district [Maryland-Washington Regional District in Prince George's County, Maryland] is hereby divided into ... classes of zones,[6] which are established as follows:

R-R zone (rural residential)

R-80 zone (one-family, detached residential)

R-55 zone (one-family, detached residential)

R-35 zone (one-family, semi-detached, and two-family, detached residential)

R-T zone (town house)

R-30 zone (multiple-family, low density residential)

R-20 zone (one-family, triple-attached residential)

R-18 zone (multiple-family, medium-density residential)

R-10 zone (multiple-family, high-density residential)

R-H zone (multiple-family, high-rise residential)

R-P-C zone (planned community)

C-O zone (commercial office building)

C-1 zone (local commercial)

C-2 zone (general commercial)

I-1 zone (light industrial)

I-2 zone (heavy industrial)"

The format follows the usual manner in setting forth zoning districts on a descending scale. The scale commences with the most restrictive district, rural residential, and continues through various classes of residential and commercial until it ultimately terminates with heavy industrial. We think it reasonable that residential use districts are considered less intense districts than local commercial. The term "less intensive zone", as used in § 30-42, means that zone appearing on the descending scale in a higher position than that zone for which application is made. *Martin and Burch v. Annapolis*, 248 Md. 551, 237 A. 2d 728 (1968). "Generally the

6. § 11.1 states "eleven (11) zones", but that number is obviously incorrect because there are 16 different classes. The variance is due to the addition of other types of zones through subsequent amendments without changing the original introductory paragraph to keep abreast of the change.

districts of less restricted uses admit the uses of the more restricted ones." *Corthouts v. Town of Newington,* 140 Conn. 284, 287, 99 A. 2d 112, 114 (1953); *Martin and Burch v. Annapolis, supra* at 560.

It is clear to us that the District Council had the right to grant less intensive zoning than that sought by the applicants, but the authority of the Council is not boundless. In *Strickler v. Board of County Commissioners,* 242 Md. 290, 219 A. 2d 58 (1966), the Court of Appeals in commenting upon § 30.42 said, at 297:

> " . . . [T]his provision of the ordinance is subject to the statutory requirements that the unrequested, less intensive zone must be supported by competent evidence and its granting must not be arbitrary and capricious."

There was in the instant case competent evidence, in the form of the Planning Board's report and the testimony of a senior planning zoning analyst for the MNCPPC, before the District Council to support the findings of the Council. We cannot say in the face of that evidence that the utilization of the power granted to the Council by § 30.42 was arbitrary or capricious.

The second reason that the appellants' attack on notice must fail is because it is obvious that the appellants had actual notice of the intended zoning. A letter dated July 22, 1970, under the letterhead of the Largo Civic Association, and signed by the appellant Robert A. Peloquin, as president of that association, was sent to the Board of County Commissioners. The letter stated:

> "A careful inspection of the signs posted on the property which is a subject of the above referenced petitions [A-7709 and A-8247] reveals a lack of compliance with section 30.311 of the Zoning Ordinance for the Maryland-Washington Regional District in Prince George's County, Maryland. Specifically, the posted signs fail to inform the public of the proposed zoning classification of the

property in question, as required by section 30.311(B) of the ordinance. *It is clear from the applicant's petition, statement of reasons, justification and intent, that the proposed classification of the property is not C-1 as posted, but rather, a combination of several classifications. . . ."* (Emphasis supplied).

The letter requested that the property be re-posted, and the proceedings recommence *ab initio.* Peloquin, at least, and presumably the members of the Largo Civic Association, knew that the zoning sought upon the property was not just C-1, but "a combination of several classifications." We note from the transcript that the appellants arrived at the hearing prepared to contest not just C-1 zoning, but any residential rezoning as well. Their testimony concerning the effect upon the schools, sewage facilities, drainage and other utilities makes it perspicuous that the appellants were not misled by the posted notice. Judge Singley, for the Court of Appeals in *McLay v. Maryland Assemblies, Inc.,* 269 Md. 465, 306 A. 2d 524 (1973), stated, at 477:

"While failure of an administrative board to give proper notice is jurisdictional and in some circumstances may be fatal, *Cassidy v. Board of Appeals,* 218 Md. 418, 421-22, 146 A. 2d 896 (1958), the requirement of notification purposed to inform may be satisfied by actual knowledge. *Clark v. Wolman,* 243 Md. 597, 600, 221 A. 2d 687 (1966), especially when it is acted upon."

We think the appellants possessed actual notice within the meaning of *McLay v. Maryland Assemblies, Inc., supra.*

II.

Appellants next argue that the order of the District Council is void because there is no record evidence of what constitutes the neighborhood. We disagree. During the hearing the applicants established their concept of what constituted the neighborhood. Using the Prince George's Community College as the center, the applicants then

extended a radius of 6,500 feet and sought to liken the neighborhood of the subject property to that of the University of Maryland, College Park. The appellants, on the other hand, offered evidence showing the neighborhood to be a much more restricted area. The District Council rejected both the applicants' and the appellants' concepts of "neighborhood". The Council said:

"We realize that "neighborhood" is a concept rather than a thing and that there obviously is room for reasonable differences as to the exact boundaries of any particular neighborhood. *We think that it is an area having common geographical, physical, and social characteristics which affect its physical development or maintenance. In this context roads are natural barriers that give reference to borders of neighborhoods. The Beltway, White House Road, Central Avenue and Route 202 are such guidelines; however, we do think that adjoining properties to major roads should also be considered within the neighborhood.* We do not think that planning neighborhoods are always existing neighborhoods but may be if the plan has been substantially developed and followed. At this time neighborhood #21 is merely a planning tool and does not meet our criteria of neighborhood. We do not think it necessary to expand the boundaries of the neighborhood described above, as the applicant would suggest, since we think the changes within that area justify reclassification of the subject property." (Emphasis supplied).

We reject the appellants' argument that the Council's finding is pure "Stengelese." [7] There was in evidence a zoning map, and we think the District Council was entitled to rely upon the zoning map for the purpose of establishing what does or does not constitute, in the Council's view, the neighborhood. The italicized portions of the above quoted

---

7. A term applied to the utterings of Charles Dillon "Casey" Stengel.

finding by the Council clearly delineate the neighborhood as the Council saw it. Even if this Court might have evaluated the evidence differently than the Council did, we are not at liberty to substitute our judgment for that of the Council where there is substantial evidence to support the Council's finding. *Sembly v. County Bd. of Appeals,* 269 Md. 177, 304 A. 2d 814 (1973); *Rockville v. Henley,* 268 Md. 469, 302 A. 2d 45 (1973); *Malasky v. Montgomery County,* 258 Md. 612, 267 A. 2d 182 (1970); *Board v. Oak Hill Farms,* 232 Md. 274, 192 A. 2d 761 (1963). As Judge Hammond (later Chief Judge) said in *Board v. Oak Hill Farms, supra* at 283:

> "In the cases dealing with consideration of the weight of the evidence, the matter seems to have come down to whether, all that was before the agency considered, its action was clearly erroneous or, to use the phrase which has become standard in Maryland zoning cases, not fairly debatable. 73 *C.J.S. Public Administrative Bodies and Procedure,* Sec. 225." (Footnote omitted).

Nor are we, in the instant case, persuaded by the appellants' averment that the Council's definition of neighborhood excludes the land sought to be rezoned in application A-8247. The short answer to that assertion is that in the Council's definition of neighborhood, as applied to this case, it found that the "adjoining properties to major roads should also be considered within the neighborhood." A-8247 borders on White House Road, a major road constituting one of the perimeters of the neighborhood and consequently falls within the "neighborhood" as determined by the Council.

### III.

Finally appellants argue that the "changes" within the neighborhood did not justify rezoning and would wreak havoc upon the community because of inadequate facilities. There was a mass of conflicting testimony between the applicants and the appellants. There was, however, evidence presented by the applicants as to the changes that had occurred in the neighborhood since the original zoning. Whether this Court, had it been deciding the case on the

merits, would have arrived at a different conclusion from that of the Council, is of no relevance. As we have previously stated, we may not substitute our judgment for that of the agency if there is substantial evidence to support the agency's findings. The Council found:

"The changes which we feel are substantial are present or reasonably possible of fruition. These include the preparation of the ring road for the Largo core, the scheduled improvement and opening of the Prince George's Community College. The construction of the Beltway, road grading of M-58, establishment of M-91, development of residential properties in Rambling Hills, Northampton, and Kettering Subdivisions, and extension of sewage to these developments are evidence of physical changes. Within the neighborhood to the north there has been R-80 and R-18 reclassifications. Town houses and commercial property are now existing in Kettering.

These changes have now changed the character of the neighborhood from an agricultural residential one to a residential-institutional neighborhood. In addition to specific physical and zoning changes, the Park and Planning Commission has adopted locational criteria for uses within this neighborhood which did not exist in 1949 when the zoning map was adopted. The Park and Planning Commission's recommendation substantially conforms to the recommendation of the Master Plan adopted in 1969. We feel that changes in zoning that are consistent with a long range plan are preferable to piecemeal reclassifications not so oriented."

In *Agneslane, Inc. v. Lucas*, 247 Md. 612, 233 A. 2d 757 (1967), the Court of Appeals said, at 618-19:

"The test to be applied on appeal to the Circuit Court, when the evidence before a zoning appeal board presents material facts which are fairly

debatable, was aptly stated . . . in *Board v. Oak Hill Farms, Inc.,* [*supra,*]:

> ' . . . whether a reasoning mind could reasonably have reached the result the agency reached upon a fair consideration of the fact picture painted by the entire record.' "

There was in the instant case substantial evidence to support the findings of the Council and the fact that the appellants produced evidence which may have moved reasonable men to decide to the contrary is immaterial. The evidence before the Council was fairly debatable, and we cannot say that the inferences and findings drawn by the Council were incorrect, arbitrary, capricious or illegal. *County Council v. Gendleman,* 227 Md. 491, 498, 177 A. 2d 687, 690 (1962). When the evidence presented before a District Council is fairly debatable, *i.e.,* one may draw one of several rational inferences therefrom, courts should not substitute their judgment for that of the agency merely because the court may disagree with the result reached by the agency. In this respect the "fairly debatable rule" is very much akin, if not identical to, the "clearly erroneous rule". *Board v. Oak Hill Farms, supra.*

*Judgments affirmed; costs to be paid by appellants.*