STIEFF *v.* COLLINS, ET AL.

[No. 172, September Term, 1964.]

*Decided March 3, 1965.*

The cause was submitted on the brief to PRESCOTT, C. J., and HAMMOND, HORNEY and SYBERT, JJ., and CARTER, C. J. of the Second Judicial Circuit, specially assigned.

Submitted by *Thomas J. Curley* for appellant.

Submitted by *S. Alfred Mund* for appellees.

CARTER, J., by special assignment, delivered the opinion of the Court.

This is an appeal from a decision of the Circuit Court for Anne Arundel County reversing a ruling of the Board of Zoning Appeals which granted a variance for the reconstruction of a nonconforming use and a twenty-five per cent expansion on property consisting of about one acre and buildings located at Linthicum, in the Fifth Election District of the County, in a use district zoned "agricultural."

The evidence presented by the record of the proceedings before the Board and the additional testimony permitted by the Circuit Court at the hearing on appeal, under the authority of Section 7(1) of Article 66B, Code (1957), established the following facts: At the time of the adoption of a comprehensive zoning ordinance for Anne Arundel County, July 1, 1952, the

subject property was owned and operated as a commercial dairy by Old Oak Dairy, Inc. which was privileged to continue its existing nonconforming use in an agricultural district pursuant to the provisions of the zoning ordinance, section 35-10. In 1952, the H. E. Koontz Creamery, Inc. acquired the property and continued to pursue the nonconforming use which consisted of the operation of a bakery for the production of doughnuts and a dairy depot for the pasteurization and distribution of milk and milk products. This operation ceased in the fall of 1958. Thereafter, the dairy plant was partially dismantled and the equipment was either sold or used in other dairy operations of the company except for a small part thereof left in the buildings. The bakery equipment was likewise dismantled and removed within a year subsequent to discontinuance of its operation. After 1958 the company acquired five or six small dairies, from which it moved the equipment that could be used in its main plant at Baltimore, to such plant, and attempted to sell the remainder. The equipment from these dairies which could not be immediately used or sold was stored in the buildings at this location. Surplus equipment from the Baltimore plant was also stored there. These buildings have been boarded up and locked since cessation of operations in 1958, without a watchman. The only activity since that time consisted of trucks bringing materials to be stored and taking equipment out which occurred fifteen to twenty times a year. No trucks were left at the site and no materials stored outside the buildings.

The decisive questions presented to the Board and trial court for determination were: (1) was there an abandonment of the original nonconforming use at the time of cessation of the dairy and bakery operations in 1958, which continued for more than one year prior to the hearing on May 14, 1963, and (2) in the alternative, was there a lawful substitute nonconforming use established at the time of cessation of operations in 1958, which has continued since that date. Nonconforming uses are usually permitted by the express terms of zoning ordinances and are so permitted in this case by the provisions of section 35-10, which provides in part:

> "A lawful nonconforming use existing on the effective date of the adoption of this chapter may con-

tinue; provided, however, * * * in the case of the abandonment of such nonconforming use for the period of one year, the right to continue such original nonconforming use shall cease. A nonconforming use may change to a use permitted in the most restricted district in which such existing nonconforming use is permitted under this chapter or to a more restricted classification."

This section further provides that the Board may grant a variance of a nonconforming use for an expansion of not more than twenty-five per cent of the area occupied by the use.

The appellant who had purchased the property from Koontz in 1962, applied to the Board in April, 1963, for recognition of a substitute nonconforming use, that is, a "warehouse use" which he claimed was then the existing use. He also requested permission for a machine shop which was of the same classification as the warehouse use and a variance allowing an increase of not more than twenty-five per cent of the use area, which was to be housed by a single new structure that would function in the main as a warehouse and to a lesser degree as a shop for the repair of machine parts. Under the ordinance the heavy commercial use district is the most restricted district in which the original nonconforming use of a dairy and bakery operation is permitted. Section 35-92(b) of the ordinance provides that the permitted uses in such heavy commercial district shall include both a warehouse and a machine shop use. It appears, therefore, that either or both of these uses, if established, would constitute a lawful substitute nonconforming use under the provisions of the ordinance (section 35-10). The trial court reversed the Board by finding there was an abandonment of the original nonconforming use in 1958, and that no warehouse use had been established as a substitute nonconforming use. The appellant contends the trial court erred in both findings.

Nonconforming uses are usually allowed to continue with the expectation that they will eventually disappear, the objective being to extinguish them as early as possible with due regard to the lawful interest of those entitled to such use. See *Dorman*

*v. Mayor & C. C. of Balto.,* 187 Md. 678, 684; *Grant v. City of Baltimore,* 212 Md. 301, 307; *Phillips v. Zoning Commissioner,* 225 Md. 102, 109. The criteria by which abandonment of a nonconforming use is determined are set forth in *Landay v. Zoning Appeals Board,* 173 Md. 460, 469, where the Court said:

> "Abandonment in law depends upon the concurrence of two, and only two, factors; one an intention to abandon or relinquish; and two, some overt act, or some failure to act, which carries the implication that the owner neither claims nor retains any interest in the subject-matter of the abandonment. 1 C.J.S. *Abandonment,* 8. Time is 'not an essential element' of abandonment, although the lapse of time may be evidence of an intention to abandon * * * and where it is accompanied by acts manifesting such an intention it may be considered in determining whether there has been an abandonment."

The question of the establishment of a substitute nonconforming use depends on whether the party asserting such use establishes by a preponderance of evidence that the subject property has been used consistently and was intended to be used permanently for the purpose of such use, as contemplated by the ordinance, rather than casually or temporarily. For the rule in respect to the burden of proof in the assertion of a nonconforming use, see *Lapidus v. Baltimore City,* 222 Md. 260, 262. For authority that a casual or temporary use is not sufficient to establish a nonconforming use, see *Mayor & C. C. of Balto. v. Shapiro,* 187 Md. 623, 634; *Beyer v. City of Baltimore,* 182 Md. 444, 452.

In the *Beyer* case the situation was strikingly simliar to the instant case. There the owner's right to continue to use the property for a nonconforming use, as here, depended upon whether there has been an abandonment of the original nonconforming use or in the alternative a substitute nonconforming use, permitted under the ordinance, had been established. In that case, the original slaughter house nonconforming use ceased operation in 1938 after which a large part of the ma-

chinery was dismantled and sold. A for-sale sign was posted on the property and the smoke stack torn down. From 1938 to the date of the application in 1943, the buildings were used as storage for the small portion of slaughter house machinery which was not dismantled and sold, as a garage on the first floor and for the storage of items of a furniture company on the second, third and fourth floors. The president of the company that operated the slaughter house testified that the company did not intend to permanently abandon this use of the property when operations were discontinued in 1938. Nevertheless, under these facts the Court held there had been an abandonment of the original nonconforming use, that is: (1) that there was an intent on the part of the owner to abandon the slaughter house operation at the subject location, and (2) that the overt acts on its part, consisting of the discontinuance of the operation, the dismantling and sale of the machinery and offering the property for sale, implied an intention of the owner to neither claim nor retain any interest in the further operation of a slaughter house business at that location (the subject matter of the abandonment), which constituted the two essential factors necessary to bring about the abandonment of a nonconforming use under the rule. We further there held the evidence was insufficient to establish a substitute nonconforming use of a storage warehouse. In so holding we pointed out that while the storage of furniture in the warehouse was extensive, and the buildings had been used to store some equipment employed in the former operations, and that such uses lasted for a considerable time (five years); nevertheless, the utilization of the buildings did not appear to have been intended as a permanent use but rather as a casual and temporary one. We, therefore, held the evidence was insufficient to prove the establishment of a new substitute nonconforming use within the meaning of the ordinance.

In the instant case, cessation of operation of the plant as a dairy and bakery, the dismantling and sale of the machinery and equipment, the placing of it in other plants of the owner and the continued cessation of operations for about five years with utilization of the buildings principally for storage of the company's unusable and unsaleable equipment, establish by reasonable inference: (1) an intent of the owner to abandon the

location for use as a dairy and bakery operation, and (2) a decision neither to claim nor to retain any further interest in its dairy or bakery operation at this location. These conclusions appear fully warranted by the established facts and circumstances of the case, heretofore related, and we therefore find no error in the trial court's ruling that there had been an abandonment of the existing nonconforming use for more than one year prior to 1963. It seems equally clear, particularly in the light of the *Beyer* case, that there was no intention on the part of the Koontz Company to use the property other than casually and temporarily for its own purposes as a storage warehouse. Under the facts and circumstances heretofore related, concerning the use of the property after 1958, it is reasonable to interpret the intention of the owner to use the property for only temporary and occasional storage of its surplus equipment after that date. The evidence shows the company was selling the surplus equipment stored in these buildings either for use elsewhere or as junk, and it is therefore probable that eventually it would have little or no surplus equipment to store there and therefore little, if any, use, for the buildings for this purpose. It further appears that the "warehouse use" contemplated by the ordinance (section 35-92 (b)), was a regular and consistent use rather than a temporary and casual one. See the *Beyer* and *Shapiro* cases, *supra*. We, therefore, find no error in the trial court's ruling that the evidence was insufficient to establish a "warehouse use" as a substitute nonconforming use within the meaning of the ordinance.

*Judgment affirmed, appellant to pay the costs.*