McLAY ET AL. *v.* MARYLAND ASSEMBLIES, INC.

[No. 329, September Term, 1972.]

*Decided July 6, 1973.*

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Walter M. Baker* and *Gene Patrick Ward,* with whom were *Baker, Lockhart, Russell & Herman* on the brief, for appellants and cross-appellees.

*William B. Evans* for appellee and cross-appellant.

SINGLEY, J., delivered the opinion of the Court.

At the root of this controversy is the question whether a nonconforming use had been discontinued or abandoned. The court below concluded that it had been neither discontinued nor abandoned, and under the law applicable to the case, we agree.

Maryland Assemblies, Inc. (Assemblies) owns a tract of some 75 acres of land in Cecil County, where it has been engaged in the manufacture and assembly of ammunition components since 1957. On 30 June 1962, the land on which Assemblies operated was classified A-R (agricultural-residential) by the Cecil County Zoning Ordinance (1962) (the Ordinance). In 1971, Assemblies sought to have its property rezoned M-2 (heavy industrial) and was unsuccessful in this effort.

In 1972, the appellant McLay, the owner of a neighboring

property, asked the Cecil County Zoning Inspector to enforce the provisions of the Ordinance which prohibited manufacturing in an A-R zone, postulating his complaint on the theory that there had been a cessation by Assemblies of its nonconforming use of the property, because its plant had not operated since some time in 1970.

When the Zoning Inspector declined to take the action requested, McLay and his wife joined with 25 other property owners and appealed to the Cecil County Board of Appeals (the Board). The Board, noting that Assemblies' manufacturing operations had ceased for a period of more than six months, concluded that the nonconforming use had been discontinued, and reversed the decision of the Zoning Inspector.

Assemblies appealed to the Circuit Court for Cecil County, which in turn reversed the action of the Board. From this order, McLay and his neighbors have appealed.

Assemblies has cross-appealed from that portion of the court's order which denied a petition for dismissal which Assemblies had filed with the Board and renewed in the circuit court, its contention being that there had been a failure to comply with Subsection 2 of Section 8 of the Ordinance which provides that the Board shall give 15 days' published notice of the entry of an appeal; shall hear the appeal within 45 days of the Zoning Inspector's decision, and shall decide the case within 15 days of the hearing.

The lower court fairly and briefly summarized the facts:

" . . . Maryland Assemblies has been in the business of manufacturing and assembling small ordnance components on its 75-acre property near Port Deposit since about 1957, and after the adoption of the Zoning Ordinance in 1962 it continued its manufacturing operation as a non-conforming use of its premises. In 1970 it completed a contract with the Navy and, although the president of the company diligently sought orders for their product, there has been no manufacturing at the plant since 1970 because of the lack of orders. However, the

machinery and equipment in the plant have been maintained in a condition for the immediate resumption of production; the office has been maintained and [is] open for business each week day with someone present to solicit business and take orders; the business has continued to be listed in the telephone directory; the company has maintained an active account in a local bank. Since the Navy contract was fulfilled in 1970, however, only the president has been on the company payroll with the exception of a watchman who worked for room and board. In July 1971 the electrical service was changed from three-phase to residential service, but it was explained that this was to reduce costs. The license issued to the plant by the Fire Marshal's Office for the use of explosives in the manufacture of its product expired on December 31, 1971, and a request was not made for a renewal until June 1, 1972, when requests were received for a license to perform prime and sub-contract work for the Government. It is conceded that there has been no production in the plant since 1970."

We now turn to the contentions of the parties.

### McLay's Appeal

The Ordinance, Section 4, Subsection 3c, relating to nonconforming uses of land, provides:

"c. If any such non-conforming use of land *ceases* for any reason for a period of more than 90 days, any subsequent use of such land shall conform to the regulations specified by this ordinance for the zone in which such land is located." (Emphasis supplied)

This should be compared with a somewhat similar provision relating to nonconforming uses of structures, or structures and premises, which is found in Subsection 5e of Section 4 of the Ordinance:

"e. When a non-conforming use of a structure, or

structure and premises in combination, *is discontinued or abandoned* for six consecutive months or for 18 months during any three-year period, the structure, or structure and premises in combination, shall not thereafter be used except in conformance with the regulations of the zone in which it is located; " (Emphasis supplied)

Perhaps the leading and certainly the most frequently cited Maryland case dealing with a nonconforming use is *Landay v. Zoning Appeals Board,* 173 Md. 460, [*Landay v. MacWilliams*] 196 A. 293 (1938). *Landay* is authority for the propositions that the effect of a cessation or discontinuance of a nonconforming use must naturally turn on the language of the ordinance, 173 Md. at 467; that abandonment involves the concurrence of an intent to relinquish and an overt act or a failure to act which is consonant with that intent, 173 Md. at 469-70, and that cessation or discontinuance without the substitution of another use or without evidence of an intent to abandon, will not prevent resumption of a nonconforming use, 173 Md. at 470.[1]

In *Canada's Tavern v. Glen Echo,* 260 Md. 206, 271 A. 2d 664 (1970), we were called upon to interpret a Montgomery County ordinance which provided that " 'abandoned' shall be defined as the cessation of a nonconforming use for a period of six months or more." We concluded that under this language a nonconforming use would be terminated by a cessation of the use for six months, irrespective of the owner's actual intent.

Under the Ordinance now before us, it might be argued that a cessation of a nonconforming use of land for a period of more than 90 days would result in the loss of the use

---

1. 1 Anderson, American Law of Zoning § 6.61 at 441-42 (1968) suggests that the use of *discontinue* in zoning ordinances is a seldom successful attempt to avoid the intent problem inherent in the concept of abandonment. The author points out that most courts have merged the terms "abandon" and "discontinue" and require proof of intent to abandon, *see* Board of Zoning Adjustment v. Poykin, 265 Ala. 504, 92 So. 2d 906 (1957).

because this would be the equivalent of abandonment, despite the fact that the Ordinance does not so provide as it did in *Canada v. Glen Echo, supra.*

Later on, when the Ordinance deals with a nonconforming use of structures, or structures and premises, it substitutes for the word "ceases" the alternative of "is discontinued or abandoned." We are inclined to agree with the court below that "is discontinued" means a voluntary cessation of user without an intent to abandon. In passing, it might be noted that had the phrase read "is abandoned or discontinued" for a specified time, the Ordinance would be consonant with the usual concept that loss by abandonment may in some cases be immediate but loss by discontinuance usually occurs after the passage of time.

The point here, of course, is that there was no voluntary cessation of user. In *Canada's Tavern, supra,* no use whatever was made of the premises for about one year, during which they were closed and locked. In *Harris Used Car Co. v. Anne Arundel County,* 257 Md. 412, 263 A. 2d 520 (1970), where we dealt with the Anne Arundel County zoning ordinance, we held that an automobile junkyard had lost its claim to a nonconforming use under the zoning ordinances enacted by the County in 1950 and 1952 because the owner had disposed of his used and junked cars in 1945 and had ceased operating his business in 1947. Under those circumstances no nonconforming use was being made of the property at the time of the enactment of the zoning law.

Neither *Canada's Tavern* nor *Harris Used Car* is apposite here, however. So far as we can determine from the record, the buildings in question were constructed or adapted by Assemblies for the conduct of its operations, and remained unchanged except for the suspension of the three-phase electric service, to avoid the payment of a demand charge. No equipment had been removed and the office had remained open. The only difference was that there was no business, although Marshall Godman, the president of Assemblies, said he had continued without success to solicit business from the United States Navy, Hamilton Watch Company and the University of Dayton.

At argument, the analogy was drawn to a nonconforming funeral home which lost its custom, but remains open for business. Even more persuasive analogies are seasonal uses: of a nonconforming icehouse [2] or of an amusement park,[3] each of which operates two or three months of the year, but remains idle for the rest of the time. In none of these cases could it be successfully argued that there had been a discontinuance. It is rather an involuntary cessation of operations resulting from the uncertainties of business life or the seasonal nature of the enterprise.

McLay makes much of the fact that there was substantial evidence from which the Board could have concluded that Assemblies had discontinued its operations, with the result that the issue was clearly debatable, with the further consequence that the lower court could not substitute its judgment for that of the administrative body, relying on *Luxmanor Citizens Ass'n v. Burkart,* 266 Md. 631, 647, 296 A. 2d 403 (1972) and *Dundalk Holding Co. v. Horn,* 266 Md. 280, 283, 292 A. 2d 77 (1972), two recent cases which restate this familiar principle.

This argument misconceives the nature of the problem. As we see it, the issue is one of law, not of fact: the meaning of the phrase *is discontinued* when used in the Ordinance disjunctively with the phrase *is abandoned.* We have pointed out that our prior decisions have always characterized abandonment as an amalgam of intention and some overt act. Discontinuance as used in the Ordinance would also mean an overt act or failure to act — if the overt act or failure to act is inconsistent with an intention to remain. Thus, had Assemblies removed its equipment or had used the buildings for purposes permitted in an A-R zone, the use would have been lost after the passage of the time fixed by the Ordinance, just as it was in *Beyer v. City of Baltimore,* 182 Md. 444, 34 A. 2d 765 (1943), which dealt with a

---

**2.** Adams v. Kalamazoo Ice & Fuel Co., 245 Mich. 261, 222 N. W. 86 (1928).

**3.** Civic Ass'n of Dearborn v. Horowitz, 318 Mich. 333, 28 N.W.2d 97 (1947); *see also* Appeal of Indianhead, Inc., 414 Pa. 46, 198 A. 2d 522 (1964).

nonconforming slaughterhouse. While under the facts of that case the Court found that the use had been abandoned, courts frequently treat a discontinuance as the equivalent of an abandonment, the only difference being that a discontinuance for a period of time fixed by statute sometimes takes the place of a finding of the intent normally required for an abandonment.[4] In *Beyer*, Judge (later Chief Judge) Marbury said, for the Court:

"In the case before us the Kriel Company disposed of all the visible machinery, altered the structure of the building by taking down the smokestack and definitely discontinued the slaughterhouse business. This would not have been done had there been any intention of resuming it in any reasonable period. Mr. Kriel's own testimony indicates that he only had a vague intention of going back into the business if there were more favorable opportunities. These opportunities apparently not only never presented themselves, but the actions of the Kriel Company indicated that it did not anticipate they would. It offered all of the property for sale, still has a sign on it, sold one piece, and has sold the lot in question here under some sort of contract to Gudis. There is clearly present an actual abandonment, with an intention no longer to use the property for slaughtering purposes. That use is the only use which would give

4. The rule in some jurisdictions is that when an ordinance refers to discontinuance and specifies a time period of nonuse, mere cessation of use for that time period is sufficient; the time period provided in the ordinance supplying, as a matter of law, the element of intent otherwise requisite. Beszedes v. Board of Comm'rs of Arapahoe County, 116 Colo. 123, 178 P. 2d 950 (1947); Auditorium, Inc. v. Board of Adjustment of Mayor & Council of Wilmington, 47 Del. 373, 91 A. 2d 528 (1952); Baml Realty, Inc. v. State, 35 App. Div. 2d 857, 314 N.Y.S.2d 1013 (1970); Village of Spencerport v. Webaco Oil Co., 33 App. Div. 2d 634, 305 N.Y.S.2d 20 (1969); Franmor Realty Corp. v. Le Boeuf, 201 Misc. 220, 104 N.Y.S.2d 247 (1951), *aff'd* 279 App. Div. 795, 109 N.Y.S.2d 525 (1952), *app. denied*, 279 App. Div. 874, 110 N.Y.S.2d 910 (1952); State ex rel. Peterson v. Burt, 42 Wis. 2d 284, 166 N.W.2d 207 (1969). However, most courts "require proof of intent to abandon although the ordinance speaks in terms of a use discontinued for a specified period of time," 1 Anderson, American Law of Zoning § 6.61 at 442 (1968) and cases cited therein.

the applicant the right to his permit. Since that use has been abandoned, the property is no longer non-conforming, but must be used only as other properties in the area can be used under the ordinance. The applicant, therefore, is not entitled to a permit for a non-conforming use." 182 Md. at 454

A similar result obtained in *Stieff v. Collins*, 237 Md. 601, 207 A. 2d 489 (1965) where a dairy and bakery had ceased operations in a plant which it had acquired. The machinery and equipment was dismantled and transferred elsewhere or sold, and the buildings were used on an irregular basis for storage. *Compare Kastendike v. Baltimore Ass'n*, 267 Md. 389, 403-05, 297 A. 2d 745 (1972) where we found that no abandonment resulted from changes in ownership, but not in use.

But there is a difference between a voluntary cessation of use which might be characterized as a discontinuance and a cessation which is involuntary:

"An involuntary interruption of a nonconforming use seldom results in a loss of use. Where the cessation of use is not the voluntary act of the user, the requisite intent to abandon does not exist. * * *

"There is no abandonment of a use where discontinuance of the use is caused by an economic depression or the inability of a landowner to find a tenant, [citing Baltimore v. Weinberg, 204 Md. 257, 103 A. 2d 507 (1954), which should be compared with Dorman v. Mayor & City Council of Baltimore, 187 Md. 678, 51 A. 2d 658 (1947)] assuming that the owner made a diligent effort to resume the use during the period of inactivity." 1 Anderson, American Law of Zoning § 6.59 at 437-38 (1968)

A somewhat more expanded discussion of interruptions of use resulting from economic considerations may be found in 2 Rathkopf, *The Law of Zoning and Planning* Ch. 61, § 5 at 61-9 (1972):

"A temporary cessation, even for a lengthy

period, caused by circumstances over which the property owner had no control, is generally held not to constitute proof of a discontinuance in the sense of abandonment within the meaning of zoning ordinance provisions since the circumstances themselves negate an inference of the necessary intention to abandon the use.

\* \* \*

" . . . [W]here there is a period of non-use because of the financial inability of the owner to continue in business or to find a tenant desirous of using the premises for a purpose permissible as a non-conforming use the requisite intent to abandon is lacking, and the right to resume the non-conforming use when opportunity presents itself is not lost.

"Non-use, intended to be temporary, caused by a depression or a lack of activity in the owner's business is generally held insufficient to show an intention to surrender the right to continue the non-conforming use. Related to this, is non-use for certain months or seasons of the year caused by the fact that the particular use is seasonal."

What we have here is clearly an involuntary cessation of use, and neither a discontinuance nor an abandonment, as the terms are used in the context of the Ordinance.

### Assemblies' Cross-Appeal

Subsection 2 of Section 8 of the Ordinance provides, in part:

"*Hearings; Appeals; Notice* — Appeals to the Board of Appeals concerning interpretation or administration of this ordinance may be taken by any person aggrieved or by any officer or bureau of the governing body of the county affected by any decision of the zoning inspector. Such appeals shall be taken within a reasonable time of such decision,

not to exceed 10 days, by filing with the zoning inspector and with the Board of Appeals a notice of appeal specifying the grounds thereof. The zoning inspector shall forthwith transmit to the Board all papers constituting the record upon which the action appealed from was taken.

"The Board of Appeals shall fix a reasonable time for the hearing of appeals, give public notice thereto as well as due notice to the parties in interest, and hold the public hearing within forty-five (45) days from the date of the decision of the Zoning Inspector. At least fifteen (15) days notice of the time and place of such hearing shall be published in a paper of general circulation in the County. At the hearing any party may appear in person or by agent or attorney. The Board shall then decide the appeal within fifteen (15) days from the time of hearing."

The Zoning Inspector's decision was made on 12 April 1972. An appeal was taken in timely fashion on 20 April. The hearing before the Board was set for 30 May, and then postponed to 27 June because of the absence of Assemblies' attorney, a postponement requested by his secretary. The Board rendered its decision on 25 July.

Assemblies moved unsuccessfully to dismiss the case before the Board on the ground that neither the hearing set for 30 May nor that actually held on 27 June was within 45 days from 12 April, the date of the Zoning Inspector's decision, and on appeal to the circuit court, urged as an additional reason for dismissal the failure of the Board to decide the case within 15 days of the 27 June hearing. From an order denying the petition to dismiss, Assemblies took a cross-appeal.

Faced with the definition contained in Section 18 of the Ordinance, "[t]he word *shall* is mandatory, the word *may* is permissive," the lower court (Roney, J.) turned to what we regard as an acceptable, pragmatic solution.

The members of the Cecil County Board of Appeals (we

were told at argument that they receive no salary) customarily meet on the last Tuesday of each month. The appeal to the Board was taken on 20 April. The Board next met on 25 April, but the case could not be heard on that day, because the Ordinance requires 15 days' notice by publication in advance of the hearing. Consequently, hearing was scheduled for 30 May, the date fixed for the Board's next meeting, which was 48 days after the Zoning Inspector's decision. It was then postponed to 27 June, the meeting next following, because of the absence of Assemblies' counsel.[5] Finally, the Board's opinion was not filed until 25 July, more than 15 days after the hearing.

Taking all of these alleged irregularities in inverse order, most of them can be summarily disposed of. Counsel for the parties stipulated that the Board could have an additional 15 days within which to file its opinion, and the opinion was filed within this time. The postponement from 30 May to 27 June was at the request of Assemblies' counsel, a delay about which it can scarcely complain. As regards the scheduling of the original hearing on 30 May which was within 48 days of the Zoning Inspector's decision and not within the 45-day period required by the Ordinance, the lower court noted that if the requirement of 15 days' notice is taken into account along with the manner in which the Board scheduled its meetings, no other result was possible as a practical matter.

Assemblies also raises two questions regarding the adequacy of notice. That there was public notice of the hearing before the Board is established by the record, and assuming, *arguendo*, that Assemblies got no direct notice,[6] there can be no showing of prejudice when Assemblies appeared at and participated in the hearing. Obviously, counsel for Assemblies must have had actual notice in order to seek a postponement.

There is ample authority for the proposition that where

5. McLay's consent to this postponement was conditioned on Assemblies' payment of the cost of the second published notice.

6. On 23 May 1972, counsel for the Board notified Assemblies' counsel that the hearing had been rescheduled.

there has been compliance with the substance of the requirements of statutes or rules by one party and the other party has not been prejudiced, technical irregularities cannot be made the basis for depriving persons of an opportunity to assert their legal rights, *compare Border v. Grooms*, 267 Md. 100, 106-07, 297 A. 2d 81 (1972); *Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 61, 225 A. 2d 294 (1966) and *Board of County Comm'rs v. Kines*, 239 Md. 119, 125, 210 A. 2d 367 (1965) *with Rasnake v. Board of County Comm'rs*, 268 Md. 295, 303-04, 300 A. 2d 651 (1973).

While failure of an administrative board to give proper notice is jurisdictional and in some circumstances may be fatal, *Cassidy v. Board of Appeals*, 218 Md. 418, 421-22, 146 A. 2d 896 (1958), the requirement of notification purposed to inform may be satisfied by actual knowledge, *Clark v. Wolman*, 243 Md. 597, 600, 221 A. 2d 687 (1966), especially when it is acted upon. We think that the letter of 23 May rescheduling the hearing met the requirement of "due notice" contained in the Ordinance, which specifies neither the time within which nor the fashion in which it is to be given. But even if it did not, Assemblies had both constructive notice and actual knowledge, and was in no way prejudiced.

> *Orders of 6 October 1972 and 1 December 1972 affirmed; costs to be paid one-half by appellants and cross-appellees and one-half by appellee and cross-appellant.*