536 A.2d 724

**HARFORD COUNTY, MARYLAND**

v.

**John H. McDONOUGH, et ux.**

No. 727, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Feb. 5, 1988.

Victor K. Butanis, Deputy Co. Atty., Max D. Miller, Jr., Co. Atty, on the brief), Bel Air, for appellant.

Patrick P. Spicer (Norman and Spicer, P.A., on the brief), Bel Air, for appellees.

Argued before MOYLAN, ROSALYN B. BELL and KARWACKI, JJ.

KARWACKI, Judge.

In this appeal we are asked to construe § 25–5.1(c)(3) of the Harford County Zoning Code (1982 as amended) which provides:

**(c) Nonconforming Buildings, Structures and Uses.**
Nonconforming buildings, structures or uses may be continued subject to the following provisions:

. . . . .

(3) In the event a nonconforming use ceases for a period of one (1) year or more, then the nonconforming use shall be deemed abandoned and compliance with this *Code* shall be required. The casual, temporary or illegal use of land or structure does not establish the existence of a nonconforming use.

The nonconforming use in question is a public boat ramp, bulkhead, and pier improving a tract of land owned by Harford County known as Otter Point Landing.[1]

The facts which give rise to this controversy between the County and the appellees, owners of land adjacent to Otter Point Landing, are not in dispute. The riparian land along Otter Point Creek, including the landing, is zoned R–2, a residential classification under the Zoning Code. A boat ramp facility is not a permitted use of land so classified, but the County had a well-established nonconforming use of Otter Point Landing for that purpose prior to the adoption of its Zoning Code.

The boat ramp at Otter Point Landing was constructed during the 1960's. By the Spring of 1983, the ramp had deteriorated to the extent that it posed a danger to those using it. Consequently, the County closed the facility on June 1, 1983, and initiated efforts to obtain funds from the State Department of Natural Resources for the rehabilitation of the public landing. Although the County intended to

---

1. Section 25–2.5 of the Zoning Code states:
   This *Code* shall apply to all lands, structures, buildings, properties and their uses within the territorial limits of the County, including land owned or leased by the County, and outside the incorporated towns or municipalities therein and to all owners of land, the tenants or occupants thereof, including land owned by municipal corporations, counties, and state and local governments.
   Otter Point Landing was not within any incorporated town or municipality.

reopen the facility after the repairs were completed, the funding was not secured for two years. Rehabilitation of the ramp and landing commenced in the Fall of 1985. In the meantime, the county instituted suit in the Circuit Court for Harford County to resolve a boundary dispute with the Otter Point Yacht Club, the owner of a parcel of land adjoining Otter Point Landing. That litigation was concluded by a consent judgment entered on August 12, 1985.

About that time the appellees sought an interpretation from the Zoning Administrator of Harford County as to whether the County's nonconforming use of Otter Point Landing had been abandoned. The Zoning Administrator ruled that there had been no abandonment and his decision was affirmed on appeal to the Board of Appeals of Harford County. On further appeal, however, the Circuit Court for Harford County reversed the decision of the Board of Appeals, and that judgment is now challenged in this Court.

■ The order of an administrative agency, such as a county zoning board, must be upheld on review if it is not premised upon an error of law and if the agency's conclusions on questions of fact or on mixed questions of law and fact are supported by substantial evidence presented to it. *Ad + Soil, Inc. v. County Comm'rs of Queen Anne's County,* 307 Md. 307, 338, 513 A.2d 893 (1986). Because the material facts in the instant case were not in dispute, the appeal of the decision of the Board of Appeals to the Circuit Court was concerned solely with the interpretation of the Harford County Zoning Code, an issue of statutory construction and a question of law. *Comptroller v. Mandel Re-election Comm.,* 280 Md. 575, 578, 374 A.2d 1130 (1977). In such a case the court's review "is expansive, that is, the appellate court may substitute its judgment for that of the administrative agency." *Gray v. Anne Arundel County,* 73 Md.App. 301, 309, 533 A.2d 1325 (1987), No. 366, September Term, 1987, filed December 4, 1987, slip op. 9 quoting *Thames Point Associates v. Supervisor,* 68 Md. App. 1, 10, 509 A.2d 1207 (1986).

We approach the construction of the provisions of the Zoning Code in the case *sub judice* mindful of well-settled rules governing our role. The cardinal rule of statutory interpretation is to ascertain and give effect to the intention of the legislative body which enacted the statute. *In re Criminal Investigation No. 1–162*, 307 Md. 674, 685, 516 A.2d 976 (1986). The primary source to which we refer to determine legislative intention is the language of the statute itself. *Blum v. Blum*, 295 Md. 135, 140, 453 A.2d 824 (1983). As this Court observed in *Ford Motor Land Development v. Comptroller*, 68 Md.App. 342, 346–47, 511 A.2d 578, *cert. denied*, 307 Md. 596, 516 A.2d 567 (1986):

> "Where the language [of the statute] is clear and free from doubt the Court has no power to evade it by forced and unreasonable construction" *State Tax Comm. v. C & P Tel. Co.*, 193 Md. 222, 231, 66 A.2d 477 (1949). Thus, where "there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly". *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). Furthermore, the statute must be construed considering the context in which the words are used and viewing all pertinent parts, provisions, and sections so as to assure a construction consistent with the entire statute. *Comptroller v. Mandel Re-election Com.*, 280 Md. 575, 579, 374 A.2d 1130 (1977). And, if there is no clear indication to the contrary, a statute must be read so that no part of it is "rendered surplusage, superfluous, meaningless or nugatory." *Bd. of Educ., Garrett Co. v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185 (1982); *Baltimore Building and Construction Trades Council v. Barnes*, 290 Md. 9, 15, 427 A.2d 979 (1981). On the other hand, we "shun a construction of the statute which will lead to absurd consequences". *Erwin and Shafer, Inc. v. Pabst Brewing Co.*, 304 Md. 302, 311, 498 A.2d 1188 (1985), or "a proposed statutory interpretation if its consequences are inconsistent with common sense". *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195 (1985).

Finally, we may not rewrite the statute by inserting or omitting words therein to make the legislation express an intention not evidenced in its original form, *City of Baltimore v. Hackley, supra,* 300 Md. at 283, 477 A.2d 1174, or to create an ambiguity in the statute where none exists. *Hunt v. Montgomery County,* 248 Md. 403, 414–15, 237 A.2d 35 (1968); *Montgomery County v. Fulks,* 65 Md.App. 227, 233, 500 A.2d 302 (1985).

■ Applying these precepts to the task at hand, we find no ambiguity in § 25–5.1(c)(3) of the Zoning Code. The Harford County Council there plainly provided in pertinent part:

> In the event a nonconforming use ceases for a period of one (1) year or more, then the nonconforming use shall be deemed abandoned and compliance with this *Code* shall be required.

Appellant would have us read this unequivocal provision in conjunction with the definition of "abandon" contained in § 25–2.4(1) of the zoning code [2] and condition the abandonment mandated by § 25–5.1(c)(3) upon a showing that the nonconforming user intended to abandon the use when the nonconforming use ceased. We decline to do so since that would vary the plainly expressed intention of the Harford County Council.

A similar argument was rejected by the Court of Appeals in *Canada's Tavern v. Glen Echo,* 260 Md. 206, 271 A.2d 664 (1970). There a restaurant had been operated in a building as a nonconforming use under the Montgomery County Zoning Code until the owner's health required her to discontinue working. Thereafter she leased the restaurant to a tenant who continued its operation until he lost his

---

**2.** Section 25–2.4 provides:
For purposes of this *Code,* the following words and phrases shall have the meanings provided below:
**(1) Abandon.** To relinquish the right to use or to cease a use of property without the intention to either transfer rights in the property or to resume the use thereof.

liquor license and went out of business. The owner of the building was unsuccessful in finding another tenant for over a year, during which time no use was made of the building. The Court held that, notwithstanding the property owner's undisputed intention to resume the nonconforming use of the building when the restaurant was closed, the nonconforming use had been abandoned under the provisions of the Zoning Code providing:

> * * * No nonconforming use, once abandoned, shall thereafter be re-established. For the purpose of this section, 'abandoned' shall be defined as the cessation of a nonconforming use for a period of six months or more.

Commenting on the intention of the Montgomery County Council in enacting that statute, the Court observed:

> We think the Council, having in mind a larger purpose, intended to align itself with those local governments which have found it desirable to delete the factor of intent in respect of the abandonment, discontinuance or cessation of nonconforming uses rather than continuing to run the gamut of its judicial determination in a succession of infinitely variable factual situations.

260 Md. at 211, 271 A.2d 664.

We believe that observation is applicable to the plain legislative intention expressed in § 25–5.1(c)(3).

Furthermore, *McLay v. Maryland Assemblies, Inc.*, 269 Md. 465, 306 A.2d 524 (1973), relied on by the appellant, is distinguishable. There the zoning ordinance being construed contained two provisions relating to abandonment of nonconforming uses. The first, which concerned nonconforming land uses, stated:

> If any such non-conforming use of land ceases for any reason for a period of more than 90 days, any subsequent use of such land shall conform to the regulations specified by this ordinance for the zone in which such land is located.

269 Md. at 468, 306 A.2d 524.

The second, dealing with nonconforming uses of a structure or structure and premises in combination, provided:

When a non-conforming use of a structure, or structure and premises in combination, is discontinued or abandoned for six consecutive months or for 18 months during any three-year period, the structure, or structure and premises in combination, shall not thereafter be used except in conformance with the regulations of the zone in which it is located.

269 Md. at 468–69, 306 A.2d 524.

The Court of Appeals held that under the second provision above quoted the question of the user's intent in ceasing the operation of an industrial plant in a structure and premises as a nonconforming use was relevant to whether an abandonment of that use had taken place. The Court pointed out that the effect of the cessation of a nonconforming use must necessarily turn on the language of the ordinance governing abandonment of such uses. The Court then observed:

Under the Ordinance now before us, it might be argued that a cessation of a nonconforming use of land for a period of more than 90 days would result in the loss of the use because this would be the equivalent of abandonment, despite the fact that the Ordinance does not so provide as it did in *Canada v. Glen Echo, supra.*

Later on, when the Ordinance deals with a nonconforming use of structures, or structures and premises, it substitutes for the word "ceases" the alternative of "is discontinued or abandoned."

269 Md. at 469–70, 306 A.2d 524.

By comparison, § 25–5.1(c)(3) of the Zoning Code which we construe mandates that the cessation of a nonconforming use for a specified period of time is the equivalent of abandonment. Accordingly, since the nonconforming use of Otter Point Landing ceased for more than one year, the appellant abandoned it.

Finally, appellant contends that § 25–5.1(c)(4) [3] of the Zoning Code should be interpreted to prevent the abandon-

---

3. Section 25–5.1(c)(4) provides:

ment mandated by § 25–5.1(c)(3). The short answer to this argument is that the only evidence before the Board of Appeals as to the extent of the damage to the boat ramp in question was that as of June 1, 1983, it had been damaged by more than fifty percent of its replacement value. Therefore, by its express terms, § 25–5.1(c)(4) was inapplicable to the reconstruction of the ramp.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY THE APPELLANT.

Any nonconforming building or structure which is damaged by less than fifty (50) percent of its replacement value, may be reconstructed to its former dimensions on the same lot and with the same nonconforming use. Nothing in these regulations shall prevent the strengthening or restoring to a safe condition of any building or structure declared to be unsafe.